IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JOSEPH A. STALLARD,                          )
                                             )
              Plaintiff,                     )
                                             )
       v.                                    )        1:22-cv-1236 (LMB/JFA)
                                             )
UNITED STATES PATENT AND                     )
       TRADEMARK OFFICE,                     )
                                             )
              Defendant.                     )

MEMORANDUM OPINION

Proceeding pro se, plaintiff Joseph A. Stallard ("Stallard" or "plaintiff") filed this civil

action under the Administrative Procedure Act ("APA") to challenge § 1202.10 of the

Trademark Manual of Examining Procedure which provides examining attorneys with guidance

on the criteria for evaluating an application to register a character in a creative work as a

trademark.  That provision was applied in denying Stallard's application to register a character

featured in his video game.  Defendant the United States Patent and Trademark Office ("PTO" or

"defendant") has filed a Motion to Dismiss for lack of subject matter jurisdiction because

Stallard's trademark application remains pending before the Trademark Trial and Appeal Board,

which means he has not exhausted the required and exclusive administrative proceedings.  [Dkt.

No. 8].  For the reasons stated in open court as supplemented in this Memorandum Opinion,

defendant's Motion to Dismiss will be granted.

I. BACKGROUND

A. **The Trademark Manual of Examining Procedure**

The PTO is charged with administering the federal system for trademark registration

pursuant to the Lanham Act, 15 U.S.C. §§ 1051 et seq.  A trademark, consisting of a "distinctive

mark[]" involving "words, names, symbols, and the like," "can help distinguish a particular

artisan's goods from those of others" and "designate[s] the goods as the product of a particular

trader." Matal v. Tam, 137 S. Ct. 1744, 1751 (2017). A trademark "helps consumers identify

goods and services that they wish to purchase, as well as those they want to avoid." Id.

The PTO's Trademark Manual of Examining Procedure ("TMEP") provides "trademark

examining attorneys in the USPTO, trademark applicants, and attorneys and representatives for

trademark applicants with a reference work on the practices and procedures relative to

prosecution of applications to register marks in the USPTO." TMEP, Foreword (8th ed. 2022).

As explained in its Introduction, the TMEP "sets forth the guidelines and procedures followed by

the examining attorneys at the USPTO"; however, the TMEP also clarifies that the guidelines

"do not have the force and effect of law" but "have been developed as a matter of internal office

management[.]" TMEP, Foreword. See In re Pennington Seed, Inc., 466 F.3d 1053, 1059 (Fed.

Cir. 2006) (observing that the TMEP "is not established law, but only provides instructions to

examiners," yet "[r]epresent[s] the PTO's established policy . . . that is entitled to our respect").

At issue in this civil action is § 1202.10 of the TMEP, which concerns proposed marks

that identify a character in a creative work, specifically providing that:

> Marks that merely identify a character in a creative work, whether used in a series or
> in a single work, are not registrable. . . .
>
> To overcome a refusal of registration on the ground that the proposed mark merely
> identifies a character in a creative work, the applicant may submit evidence that the
> character name does not merely identify the character in the work. For example, the
> applicant may submit evidence showing use of the character name as a mark on the
> spine of the book, or on displays associated with the goods, in a manner that would be
> perceived as a mark.
>
> A refusal of registration on the ground that the mark merely identifies a character in a
> creative work can be made regardless of whether the creative work is the sole item in
> the identification of goods/services or is listed with other items. . . .

2

B. **Plaintiff's Trademark Application**

Stallard is the creator and publisher of a video game, "Target of Desire: Episode 1," in which one of the main characters is "Maria." [Dkt. No. 1] ¶ 18.  On November 19, 2021, Stallard filed an application to register the character "Maria" as an image mark for use on video games (the "Maria mark").  Id. ¶ 19.  The Maria mark is depicted below:



On April 21, 2022, the examining attorney issued an initial non-final Office Action that refused registration because the proposed mark "as used on the specimen of record, identifies only a particular character in a creative work; it does not function as a trademark to identify and distinguish applicant's goods from those of others and to indicate the source of applicant's goods."[1]  Def. Ex. A [Dkt. No. 9-1] at 3 (citing 15 U.S.C. §§ 1051-1052, 1127).  The examining attorney also cited § 1202.10 in explaining that "[a] design of a character is registrable as a trademark only where the record shows that it is used in a manner that would be perceived by consumers as identifying the goods in addition to identifying the character."  Id.  The examining attorney reasoned that "[i]n this case, the specimen shows the applied-for mark used only to identify a character and not as a trademark for applicant's goods because the applied-for mark

---

[1] Defendant has attached to its motion to dismiss documents from Stallard's trademark registration proceedings before the PTO.  Because these documents are "integral to the complaint and authentic," they may be considered without converting defendant's motion to dismiss into a motion for summary judgment.  Lokhova v. Halper, 441 F. Supp. 3d 238, 252 (E.D. Va. 2020) (quoting Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007)).

identifies a character named Maria that [is] featured in the applicant's video game, <u>The Target of</u>
<u>Desire.</u>  The applied-for mark does not function as source identifying, in that consumers will not
recognize the applied-for mark as the source provider or creator of the goods," because "it is
clear that <u>The Target of Desire</u> is the provider of the goods."  <u>Id.</u>  Registration was also denied
on the grounds that the specimen submitted by Stallard was "not acceptable as a display
associated with downloadable software and does not show the applied-for mark as actually used
in commerce."  <u>Id.</u>

On November 9, 2021, Stallard filed a response to the office action.  Def. Ex. B [Dkt. No.
9-1].  On July 18, 2022, the examining attorney issued a Final Office Action which denied
registration of the Maria mark.  Def. Ex. C [Dkt. No. 9-1].  Referencing §1202.10, the examining
attorney reiterated that "the applied-for mark is merely used to identify and explain the character
Maria in the applicant's video game" and was therefore not registrable.  <u>Id.</u> at 21.  As an
additional ground for refusal of registration, the examining attorney concluded that the substitute
specimens provided by Stallard were inadequate because he "failed to provide evidence of use of
the applied-for mark in commerce."  <u>Id.</u> at 23.

### C. **Procedural History**

On August 9, 2022, Stallard timely appealed that decision to the Trademark Trial and
Appeal Board ("TTAB").  [Dkt. No. 1] ¶ 25.  Among other grounds for appeal, his opening brief
challenged TMEP § 1202.10 as imposing a "misleading" and "rigid bright-line rule against
characters as trademarks [which] has no basis in the statute or case law" and contravenes
decisions by federal courts that characters can function as trademarks.  Def. Ex. D [Dkt. No. 9-1]
at 36-38.

On November 1, 2022, before the examining attorney had filed a response to the TTAB
appeal, Stallard filed the pending two-count Complaint, which generally alleges that the PTO

"wrongly refused [his] trademark registration" because the examining attorney relied on § 1202.10 and "gave [it] far more weight than any statute or case law." [Dkt. No. 1] ¶¶ 10. 41. As relief, he seeks "removal of Section 1202.10 from the TMEP." Id. at 6. More specifically, Count I of the Complaint alleges that TMEP § 1202.10 constitutes "final agency action" that violates the APA, 5 U.S.C. § 706(2), because it operates to deny the registration of marks like plaintiff's "because of [their] nature as a character" in violation of 15 U.S.C. § 1052 (which prohibits refusal of registration of a mark "on account of its nature," subject to certain exceptions). Id. ¶¶ 5-6, 34-36, 40-42. Count II, captioned as "ultra vires action," essentially duplicates Count I by claiming that "[i]f TMEP § 1202.10 is illegal, the Court can also remove it using its equity power." Id. ¶ 45.

On November 15, 2022, the examining attorney filed her brief before the TTAB, in which she responded to Stallard's arguments about the validity of § 1202.10. Def. Ex. E [Dkt. No. 9-1]. The examining attorney explained that she "is not disputing that images of characters have a special value as trademarks for their creative works and may be registrable, as provided in the TMEP § 1202.10. Nor is [she] applying a bright-line rule against characters as trademarks, as [Stallard] contends. The issue in this case is whether this particular mark as shown in the sole specimen of record in this case would be perceived as a trademark, and not merely a design of a character." Id. at 50. The examining attorney reasoned that a character mark could serve as a trademark if it were "perceived by the purchasing public not just as a character but also as a mark which identifies and distinguishes the source of the goods to be registrable"; however, she argued that in this case, the Maria mark "fails to impart any commercial impression as a trademark for the Class 9 goods . . . indicating the source of [Stallard's] downloadable electronic game software." Id. at 50-51.

On December 5, 2022, Stallard filed his reply brief which continued to challenge the validity of TMEP § 1202.10. See Def. Ex. F [Dkt. No. 9-1] at 60-61. On December 19, 2022, the appeal was submitted to the TTAB for a final decision, which remains pending as of February 28, 2023. See Def. Ex. G [Dkt. No. 9-1] at 63.

On January 17, 2023, the PTO filed a Motion to Dismiss this civil action for lack of jurisdiction [Dkt. No. 8], which has been fully briefed and argued.

## II. DISCUSSION

### A. Standard of Review

Rule 12(b)(1) requires that a civil action be dismissed when the court lacks subject matter jurisdiction over the dispute. A plaintiff bears the burden of proving that subject matter jurisdiction exists. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When a defendant challenges subject matter jurisdiction on the ground that "the complaint fails to allege sufficient facts to support subject matter jurisdiction," a court "assume[s] the truthfulness of the facts alleged." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009). When a defendant "challenges the veracity of the facts underpinning subject matter jurisdiction," a court may consider evidence outside the complaint to determine whether there are facts that support jurisdiction "without converting the motion to a summary judgment proceeding." Id. at 192.

### B. Analysis

The sole issue before the Court is whether it has subject matter jurisdiction over plaintiff's APA and ultra vires challenge of TMEP § 1202.10 given that his trademark registration appeal remains pending before the TTAB. Plaintiff maintains that the legal injury he has suffered is the refusal of his trademark registration as a result of the agency's application of TMEP § 1202.10. See [Dkt. No. 1] ¶¶ 41-42; [Dkt. No. 13] at 6. Defendant argues that the Court lacks subject matter jurisdiction to consider plaintiff's challenge to TMEP § 1202.10

6

because Congress established a review scheme in the Lanham Act that first requires exhaustion of administrative review.  That review is exclusive and precludes district court review of plaintiff's collateral claims while the TTAB appeal is pending.  In response, plaintiff argues that he is not seeking judicial review of the registration decision.  Instead, he is attacking § 1202.10, and therefore bringing this civil action does not amount to "circumventing" the TTAB appeals process.

Whether the Court has jurisdiction over plaintiff's claims depends on whether the Lanham Act implicitly divests a district court of jurisdiction over claims like those raised by plaintiff and requires that such claims first go through the administrative review scheme established by the statute before being presented to a federal court.  As the Federal Circuit has explained, although the APA provides a "general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies." Sec. People, Inc. v. Iancu, 971 F.3d 1355, 1363 (Fed. Cir. 2020) (quoting Bowen v. Massachusetts, 487 U.S. 879, 903 (1988)).  Rather, in exercising its power to define the jurisdiction of lower federal courts, Congress has "made different choices in different contexts about the channeling of judicial review of agency action." Pers. Audio, LLC v. CBS Corp., 946 F.3d 1348, 1352 (Fed. Cir. 2020).  As relevant here, Congress can "impliedly preclude jurisdiction by creating a statutory scheme of administrative adjudication and delayed judicial review in a particular court." Bennett v. U.S. Sec. & Exch. Comm'n, 844 F.3d 174, 178 (4th Cir. 2016).

Determining whether a statutory review scheme is intended to be exclusive involves a two-step inquiry under Thunder Basin Coal Company v. Reich, 510 U.S. 200 (1994), and its progeny.  See Bennett, 844 F.3d at 181.  First, the Court must consider whether it is "fairly

discernible" from the statute that Congress intended that review of covered agency actions to "proceed exclusively through the statutory review scheme," which involves examining the statute's text, structure, and purpose. Elgin v. Dep't of Treasury, 567 U.S. 1, 10 (2012). Second, the Court determines "whether plaintiff['s] claims are of the type Congress intended to be reviewed within this statutory structure." Bennett, 844 F.3d at 181 (quoting Thunder Basin, 510 U.S. at 212).

      1.  Thunder Basin Step One

At the first step of the Thunder Basin analysis, to determine whether it is "fairly discernible" that Congress intended that review of agency action proceed exclusively through the statutory scheme, the Court examines the statute's "text, structure, and purpose." Elgin, 567 U.S. at 10.

As defendant points out, the Lanham Act establishes a precise and comprehensive scheme for administrative and judicial review of trademark registration decisions. An applicant seeking to register a trademark first files an application with the PTO, 15 U.S.C. § 1051, and the application is then referred to an examiner who determines whether the mark is entitled to registration, id. § 1062. If the mark is found not to be entitled to registration, the examiner is required to notify the applicant, and the applicant may reply or amend the application for reexamination. Id. § 1062(b). This procedure "may be repeated until the examiner finally refuses registration of the mark" or the mark is found to be entitled to registration. Id. § 1062(b)(1); see 37 C.F.R. § 2.63.

If the examining attorney issues a final action refusing registration, the applicant may appeal that "final decision" to the TTAB. See 15 U.S.C. § 1070 (providing that "[a]n appeal may be taken to the [TTAB] from any final decision of the examiner in charge of the registration of marks"). The TTAB is an administrative tribunal that includes the Director of the PTO, the

Deputy Director of the PTO, the Commissioner for Patents, the Commissioner for Trademarks,

and administrative trademark judges who are appointed by the Secretary of Commerce in

consultation with the Director of the PTO.  Id. § 1067(b).  The PTO has promulgated regulations

governing appeals of an examiner's refusal decision to the TTAB, which include briefing by

both the applicant and the examining attorney.  See 37 C.F.R. §§ 2.141-2.142.  After reviewing

the briefing and the record, the TTAB issues a decision on the appeal.  The Director of the PTO

is authorized to "reconsider, and modify or set aside, a decision of the [TTAB]."  15 U.S.C.

§§ 1068, 1070.

  If an application for a trademark remains rejected, the Lanham Act authorizes judicial

review of the TTAB or the Director's decision by either the Federal Circuit or a federal district

court.  Specifically, 15 U.S.C. § 1071 provides that "[a]n applicant for registration of a mark . . .

who is dissatisfied with the decision of the Director or Trademark Trial and Appeal Board, may

appeal to the United States Court of Appeals for the Federal Circuit," id. § 1071(a), or "said

person may, unless appeal has been taken to said United States Court of Appeals for the Federal

Circuit, have remedy by a civil action" in an appropriate United States District Court, id. §

1071(b).  In an appeal to the Federal Circuit, the court reviews "the decision from which the

appeal is taken on the record before the [PTO]," and "[u]pon its determination the court shall

issue its mandate and opinion to the Director, which shall be entered of record in the [PTO] and

shall govern the further proceedings in this case."  Id. § 1071(a)(4).  If the applicant opts to

proceed by way of a civil action in a federal district court, the record before the PTO "shall be

admitted on motion of any party" but the parties are permitted "to take further testimony."  Id. §

1071(b)(3).  All expenses of the proceeding, unless unreasonable, are to "be paid by the party

bringing the case, whether the final decision is in favor of such party or not."  Id.  The district

court is authorized to consider new issues and enter broad relief: "[t]he court may adjudge that an applicant is entitled to a registration upon the application involved, that a registration involved should be canceled, or such other matter as the issues in the proceeding require, as the facts in the case may appear," and the "adjudication shall authorize the Director to take any necessary action, upon compliance with the requirements of law." Id. § 1071(b)(1).

The structure of the Lanham Act expressly provides for a comprehensive administrative and judicial review scheme, which shows Congress's intent to channel claims concerning a registration decision first to an administrative forum (the TTAB) and then to an Article III court for judicial review either by direct appeal to the Federal Circuit or by a civil action in a federal district court. Specifically, 15 U.S.C. § 1070 provides that a decision of an examining attorney may be appealed to the TTAB, and § 1071 details how further "[a]ppeal to courts" must proceed, with §§ 1071(a) and (b) specifically outlining the two avenues available to parties who are "dissatisfied" with the Director's or TTAB's decision, as well as the procedures governing each method of appeal, such as the parties' ability to present new evidence or raise new issues. The text and structure of the Lanham Act therefore support the conclusion that Congress intended for the statutory review scheme to be exclusive.

This conclusion is consistent with another decision in this district which found that "the statutory scheme governing the challenge to a trademark's registration is comprehensive" and held that a suit under the APA challenging the PTO's decision to renew a trademark registration was precluded by the Lanham Act, because the statute provided that disputes over a trademark's registration are to be resolved through inter partes cancellation proceedings. See Bacardi & Co. Ltd. v. PTO, No. 1:21-cv-1441, 2022 WL 2184940 (LOG/IDD), at *3 (E.D. Va. Apr. 6, 2022). Although Bacardi concerned a different type of challenge to a trademark decision and

proceeding, the court's reasoning is applicable here: by creating a comprehensive process to challenge trademark registration decisions through a trademark examination process, followed by an appeal to the TTAB and then to a federal court, Congress has demonstrated an intent to preclude collateral challenges to registration decisions such as through the APA.

As defendant points out, courts have found that congressional intent to preclude extra-statutory review is "fairly discernible" from the text and structure of similarly comprehensive statutory schemes. See Bennett, 844 F.3d at 181-82 (holding that the Securities Exchange Act of 1934, 15 U.S.C. § 78a, et seq., "channel[s] claims first into an administrative forum" and then "includes a comprehensive scheme that provides for judicial review in the appropriate court of appeals, with substantially the same authority to affirm . . . or set aside final agency orders . . . as well as authority to consider new arguments, reject findings of fact, remand to adduce new evidence, and issue stays," showing an intent to deny collateral district-court challenges); Elgin, 567 U.S. at 11-12 (holding that the "painstaking detail" of the Civil Service Reform Act's provisions for federal employees to obtain review of adverse employment actions evinces congressional intent to deny covered employees an avenue of review in district court for even facial constitutional claims).

Most notably, courts have held that the Patent Act, which provides an "analogous scheme" for administrative and judicial review as 15 U.S.C. § 1071, B & B Hardware, Inc. v. Hargis Industries, Inc., 575 U.S. 138, 144 (2015), provides "an intricate scheme for administrative and judicial review of PTO patentability determinations that evinces a clear [c]ongressional intent to preclude actions under the APA seeking review of the PTO's reasons for deciding to issue a patent." Pregis Corp. v. Kappos, 700 F.3d 1348, 1358 (Fed. Cir. 2012). As the Federal Circuit explained in Pregis, which concerned a third-party's attempt to challenge

a patent issuance decision under the APA, "[t]hat the Patent Act dictates the courts in which a disappointed applicant may appeal a patentability determination also shows Congress intended to preclude challenges to such PTO actions under the APA." Id. at 1359. Similarly, in Personal Audio, LLC v. CBS Corporation, 946 F.3d 1348, the Federal Circuit affirmed the district court's conclusion that it lacked jurisdiction to hear the plaintiff's Seventh Amendment challenge to the Patent Trial and Appeal Board's ("PTAB") final written decision in an inter partes proceeding. The Federal Circuit reasoned that it is "fairly discernible" from the statute that judicial review of the PTAB's final written decisions in inter partes review proceedings is limited to an appeal to the Federal Circuit which "deprives the district court of jurisdiction to hear [the plaintiff's] collateral attack on the final written decision." Id. at 1353-54. In both cases, the Federal Circuit found persuasive that the Patent Act presented alternative mechanisms for review of the claims at issue, "unlike cases in which preclusion of a suit under the APA would leave an agency action entirely free from judicial review." Pregis Corp., 700 F.3d at 1358; Personal Audio, 946 F.3d at 1353. That reasoning applies with equal force to Stallard's claims because judicial review, either by the Federal Circuit or a district court, is available at the end of the TTAB process.

The existence of judicial review following the conclusion of the TTAB process distinguishes this case from SAS Institute, Inc. v. Iancu, 138 S. Ct. 1348 (2018), on which plaintiff relies for the proposition that the trademark appeals process, like the "statutory patent appeals process[,] does not preclude [judicial review under] the APA." [Dkt. No. 13] at 9. Plaintiff quotes the Supreme Court's observation in SAS Institute that "[i]f a party believes that the Patent Office has engaged in 'shenanigans' by exceeding its statutory bounds, judicial review remains available consistent with the Administrative Procedure Act, which directs courts to set aside agency action 'not in accordance with law' or 'in excess of statutory jurisdiction, authority,

or limitations.'" 138 S. Ct. at 1359 (first quoting <u>Cuozzo Speed Techs., LLC v. Lee</u>, 579 U.S. 261, 275 (2016), then quoting 5 U.S.C. §§ 706(2)(A),(C)). <u>SAS Institute</u> concerned a provision of the America Invents Act providing that the PTO's decision to institute inter partes review of patents "shall be final and non-appealable," 35 U.S.C. § 314(d), which the Supreme Court interpreted in <u>Cuozzo</u> to bar judicial review of the Director's determination under § 314(d) as to whether there is a 'reasonable likelihood' that the claims are unpatentable on the grounds asserted." <u>Cuozzo</u>, 579 U.S. at 274-76. In discussing "shenanigans," the Supreme Court clarified that its interpretation of the statutory preclusion of judicial review in § 314(d) did not extend so far as to "categorically preclude review" of a decision whether to institute review of the patent or to "enable the agency to act outside its statutory limits," making clear that such claims could still be brought under the APA. <u>Id.</u> at 276; <u>SAS Institute</u>, 138 S. Ct. at 1359 (observing that "nothing in § 314(d) or <u>Cuozzo</u> withdraws our power to ensure that an inter partes review proceeds in accordance with the law's demands"). Therefore, <u>Cuozzo</u> and <u>SAS Institute</u> are inapposite because they concerned a statutory provision that appeared to preclude all appellate review of a PTO decision; by contrast, the Lanham Act does not foreclose judicial review of a trademark registration decision but rather defines when such review can take place.

The purpose of the Lanham Act also supports the conclusion that Congress implicitly intended the statutory review scheme to be exclusive. Congress "enacted the Lanham Act in 1946 in order to provide national protection for trademarks used in interstate and foreign commerce." <u>Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.</u>, 469 U.S. 189, 193 (1985) (citing S. Rep. No. 79-1333, at 5 (1946)). Before enactment of the Lanham Act, "rights to trademarks were uncertain and subject to variation in different parts of the country." <u>Id.</u> The goal of the statute was to ensure "nationally the greatest protection that can be given them." <u>Id.</u> One of the

13

"adjudicative mechanisms to help protect marks" created by the Lanham Act was the system of trademark registration with the PTO.  B & B Hardware, 575 U.S. at 142 (discussing the trademark registration process, appeal before the TTAB, and judicial review).

The judicial review provisions of the Lanham Act originally "'incorporate[d] by reference' the procedures for appellate review of patent application denials," and in 1962, the "cross-reference" to the Patent Act was replaced with "language substantially similar to the language pertaining to the procedures for review of patent denials." Shammas v. Focarino, 784 F.3d 219, 226-27 (4th Cir. 2015) (quoting S. Rep. No. 87-1207, at 7 (1962)).  Accordingly, the Fourth Circuit has "looked to the legislative history of the patent provisions, 35 U.S.C. §§ 141 and 145, for insight into Congress's intent in enacting § 1071." Snyder's-Lance, Inc. v. Frito-Lay North America, Inc., 991 F.3d 512, 522 (4th Cir. 2021).  The legislative history of the parallel patent provisions, as discussed by the Supreme Court in Hoover Company v. Coe, 325 U.S. 79, 87 (1945), shows that for many years, a party who lost a patent appeal in one of the Federal Circuit's predecessor courts could seek a remedy for the same decision in district court. See Snyder's-Lance, 991 F.3d at 522-23.  In 1927, Congress created the modern structure for appellate review of patents and decided to "allow an applicant to have the decision of the Patent Office reviewed either by the court of appeals or by filing a bill in equity, but not both." Id. at 523 (quoting Hoover, 325 U.S. at 87).  With that amendment, "the number of possible appeals was to be reduced, while saving to litigants the option of producing new evidence in a court, by retaining the equity procedure" in district court.  Hoover, 325 U.S. at 87.

Thus, the purpose of the Lanham Act, including the history of its judicial review provisions as adopted from the analogous patent context, shows that it was Congress's intent to provide for a nationwide and more streamlined system of adjudicating registration requests for

14

trademarks.  Allowing attacks to trademark registration decisions to proceed outside the statutory scheme would be inconsistent with that purpose.

Plaintiff's primary response in opposition to the exclusivity of the statutory review process is that he is challenging TMEP § 1202.10, not the PTO's refusal of the Maria mark.  He maintains that "meaningful review" of § 1202.10 is not available through the TTAB appeal and subsequent judicial review under 15 U.S.C. § 1071 because only his registration decision will come before the Federal Circuit or a district court.  [Dkt No. 13] at 12-13.  Plaintiff's arguments go to the second step of the Thunder-Basin analysis as to whether his claims are the type intended to be reviewed within the Lanham Act's scheme.

2.   Thunder Basin Step Two

The second step of the Thunder Basin framework requires determining whether plaintiff's "claims are of the type Congress intended to be reviewed within th[e] statutory structure," Thunder Basin, 510 U.S. at 212, which involves considering three factors: "(1) whether the statutory scheme 'foreclose[s] all meaningful judicial review' . . . (2) the extent to which the plaintiff's claims are 'wholly collateral' to the statute's review provisions, and (3) whether 'agency expertise could be brought to bear on the . . . questions presented.'"  Bennett, 844 F.3d at 181 (quoting Thunder Basin, 510 U.S. at 212); see Free Enter. Fund v. Pub. Co. Acct. Oversight Bd., 561 U.S. 477, 489 (2010); Elgin, 567 U.S. at 15.

The first factor, "meaningful judicial review[,] is the most important factor" in this analysis," Bennett, 844 F.3d at 183 n.7, and warrants finding that the Lanham Act precludes district court jurisdiction over plaintiff's APA claims.  As discussed above, judicial review is fully available to plaintiff at the end of the TTAB appeals process, and the requirement that "the matter must be fully adjudicated in the administrative proceedings does not foreclose meaningful judicial review."  Swyers v. PTO, No. 1:16-cv-1042, 2016 WL 6897788, at *3 (E.D. Va. Nov.

15

21, 2016) (holding that the plaintiff could not challenge a regulation promulgated by the PTO that set the statute of limitations for the PTO to bring a disciplinary action against a person engaged in practice before the agency outside the statutory review process for disciplinary actions under 35 U.S.C. § 32, in part because § 32 "expressly provides for review by the Court upon the conclusion of the administrative proceeding" and requiring that the plaintiff proceed through the administrative process does not make subsequent judicial review inadequate).

Plaintiff argues that meaningful judicial review of his claim is unavailable because the TTAB "can only review the decision of the examiner," the TTAB "does not . . . [have] authority to review or modify the TMEP," and "[t]he statute does not indicate that the Federal Circuit could review the TMEP." [Dkt. No. 13] at 12-13. As for district court review, plaintiff maintains that the district court would be limited to the TTAB's decision, which concerns registration, and could "only 'adjudge' the registration.'" Id. at 13.

Plaintiff's arguments are unavailing. At every step of the statutory review process, in determining whether the refusal of registration was proper, the adjudicatory body—first the TTAB, then a federal court—has the opportunity to consider the validity of TMEP § 1202.10. The TMEP by its terms applies only to examining attorneys, and when the TTAB considers an appeal of an examining attorney's registration refusal, it evaluates whether "based on the record before the examiner, the examiner's action was correct." In re Bose Corp., 772 F.2d 866, 869 (Fed. Cir. 1985); see Trademark Trial and Appeal Board Manual of Procedure § 1217 (2022). Such review inherently must include the propriety of an examiner applying a TMEP provision; indeed, in briefs filed with the TTAB, plaintiff has challenged TMEP § 1202.10 as having "no basis in the statute or case law." Def. Ex. D [Dkt. No. 9-1] at 36-37. Even if the TTAB lacked the authority to invalidate a particular TMEP provision, when the Federal Circuit or a district

16

court conducts judicial review of the TTAB's decision, that court can "meaningfully address" whether the TMEP provision comports with the Lanham Act and relevant case law. <u>See Sec. People</u>, 971 F.3d at 1359 (holding that even if the PTAB lacks the authority to decide constitutional questions, meaningful judicial review is still available because the Federal Circuit can address the constitutional questions on appeal); <u>Elgin</u>, 567 U.S. at 17.

  As defendant correctly points out, in reviewing the TTAB's decision as to registration of the Maria mark, the Federal Circuit or a district court can "review the propriety of a TMEP provision applied during administrative proceedings[.]" [Dkt. No. 16] at 4. Issues of law—such as plaintiff's argument that TMEP § 1202.10 is inconsistent with the Lanham Act—are reviewed <u>de novo</u>. To illustrate the way in which a federal court may review a TMEP provision, defendant aptly points to <u>In re Sones</u>, 590 F.3d 1282 (Fed. Cir. 2009), in which the Federal Circuit reviewed an appeal of the TTAB's decision affirming the examiner's refusal of trademark registration. As part of its review, the Federal Circuit considered the PTO's application of a three-part test adopted in the TMEP, evaluated the validity of that TMEP provision, found that it was not consistent with the case law or "trademark statute or policy," and "decline[d] to follow the TMEP" provision, observing that "the TMEP is instructive, but 'is not established law.'" <u>Id.</u> at 1286-88 (quoting <u>In re Pennington Seed</u>, 466 F.3d at 1059). After concluding that it "cannot approve of the rigid, bright-line rule that the PTO applied," the Federal Circuit vacated the TTAB's decision and remanded the case to the PTO with instructions to reconsider the proposed mark. In the case of appeal by way of a civil action, a district court reviewing a decision of the TTAB "may adjudge . . . such other matter as the issues in the proceeding require," 15 U.S.C. § 1071(b)(1), which would include the propriety of a rule applied by the PTO to the registration decision. Indeed, the district court has "authority independent of the PTO to grant or cancel

registrations and to decide any related matters[.]" <u>Swatch AG v. Beehive Wholesale, LLC</u>, 739

F.3d 150, 155 (4th Cir. 2014). Thus, if the Federal Circuit or a district court were to agree with

plaintiff that TMEP § 1202.10 contravenes the Lanham Act, the court could disapprove the

TMEP provision and remand with instructions to reconsider the mark without application of

§ 1202.10.

      To the extent plaintiff is arguing that neither the Federal Circuit nor a district court

would be able to invalidate and set aside TMEP § 1202.10 in considering a direct appeal from

the TTAB, whereas under the APA a reviewing court could "hold unlawful and set aside agency

action," 5 U.S.C. § 706(2), the difference in remedy does not render judicial review of plaintiff's

claims under the Lanham Act inadequate. Plaintiff cites no authority for the proposition that he

is entitled to facial invalidation of a TMEP provision when the legal injury for which he seeks

relief is the purported wrongful refusal of the Maria mark. <u>Cf.</u> <u>Bennett</u>, 844 F.3d at 185 n.12

(rejecting the argument that a difference in remedy affects the meaningfulness of judicial review,

reasoning in part that the plaintiff "assumes she is entitled to her preferred remedy" which is

"incorrect" because "Congress may substitute remedies for illegal action"). The difference in

remedy would have no effect on the Federal Circuit or district court's consideration of the issues

presented by plaintiff's claim, and vacatur of the TTAB's decision with instructions not to apply

TMEP § 1202.10 would redress the harm caused by the PTO's refusal of the Maria mark based

on that TMEP provision.

      Plaintiff also suggests that meaningful review of a TMEP provision is unavailable

through direct appeal of a TTAB decision because "[t]he plaintiff could only get that review if

the TTAB affirmed the refusal. If the TTAB agreed the TMEP § 1202.10 is unlawful, then the

plaintiff could not review the TMEP at all." [Dkt. No. 13] at 12. Essentially, he contends that

the possibility that his challenge to TMEP § 1202.10 might be mooted by a favorable decision

from the TTAB precludes meaningful judicial review of the provision through the statutory

scheme.  Contrary to plaintiff's assertion, the possibility that his claims might be mooted by the

TTAB does not necessitate review outside the administrative scheme but actually "warrants the

requirement that [he] pursue adjudication, not shortcut it."  Jarkesy v. SEC, 803 F.3d 9, 27 (D.C.

Cir. 2015) (quoting FTC v. Standard Oil Co., 449 U.S. 232, 244 n.11 (1980)) (considering a

similar argument in the context of whether the plaintiff's claims are collateral and appropriate for

review outside the administrative scheme).  That possibility is a "feature of the administrative-

exhaustion requirement, not a bug," id. at 27 (emphasis omitted), because as the Supreme Court

has explained, "'[o]ne of the principal reasons to await the termination of agency proceedings'

. . . is 'to obviate all occasion for judicial review,'" id. (quoting Standard Oil, 449 U.S. at 244

n.11).  Moreover, if the TTAB sided with plaintiff, agreed that § 1202.10 is unlawful, and

granted registration of the Maria mark, plaintiff would have suffered no concrete or

particularized injury and therefore would have no Article III standing to bring a lawsuit

challenging TMEP § 1202.10.  See Spokeo, Inc. v. Robins, 578 U.S. 330, 339-40 (2016)

(discussing particularization and concreteness requirements of Article III standing); Lujan v.

Defs. of Wildlife, 504 U.S. 555, 573-74 (1992) ("A plaintiff raising only a generally available

grievance about government—claiming only harm to his and every citizen's interest in proper

application of the Constitution and laws, and seeking relief that no more directly and tangibly

benefits him than it does the public at large—does not state an Article III case or controversy.").

　　　　Finally, plaintiff suggests that raising his claims in a district court appeal under the

Lanham Act would require him to "pay 'all the expenses of the proceeding,'" which makes that

review process not "meaningful."  [Dkt. No. 13] at 14 (quoting 15 U.S.C. § 1071(b)(3)).  This

argument is unpersuasive.  Plaintiff cites on an out-of-context quote from Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007), that in the context of a "genuine threat of enforcement," "as a prerequisite to testing the validity of the law in a suit for injunction," a plaintiff is not required "to bet the farm . . . by taking the violative action," id. at 129, 134.  In Free Enterprise Fund, the Supreme Court relied on this principle in finding that the challengers would need to "incur a sanction" or take some other sizeable risk to trigger the statutory mechanism for administrative and judicial review, which made the statutory scheme at issue in that case not a "meaningful avenue of relief."  561 U.S. at 490-91.  The concerns underlying the Supreme Court's reasoning in Free Enterprise are not present in this case, because plaintiff is not faced with the choice of taking "any additional risks" in order to obtain judicial review, Bennett, 844 F.3d at 186—judicial review will become available in due course.  Moreover, as this Court has recognized, requiring that the party seeking a de novo civil action to pay the expenses of the proceeding is a reasonable part of the judicial review scheme created by Congress in the Lanham Act.  See Booking.com, B.V. v. Hirshfeld, No. 1:16-cv-425 (LMB/IDD), 2021 WL 2277331, at *2 (E.D. Va. June 3, 2021).  The Supreme Court recently observed that the rationale of the analogous expense provision under the Patent Act, 35 U.S.C. § 145, is that paying expenses for the proceeding is "a condition for permitting such extensive review" by a district court.  Peter v. Nantkwest, Inc. 140 S. Ct. 365, 370 (2019).  Such extra expenses, other than a standard filing fee, are not imposed if review is sought in the Federal Circuit.  Therefore, it is inconceivable that judicial review under 15 U.S.C. § 1071(b) cannot be considered meaningful simply because a party choosing one of the avenues of relief is required by that same statute to pay the expenses of the proceeding as a condition for obtaining such relief.

Turning to the second factor, plaintiff argues that his claims are "wholly collateral" to the Lanham Act's scheme because he "filed a separate TTAB appeal to reverse the refusal," "[t]his case cannot reverse that refusal," "[o]nly the TTAB can reverse the refusal," and he has already "sustained sufficient 'legal wrong' . . . to justify an APA claim." [Dkt. No. 13] at 15, 17-18. Plaintiff's arguments fail for several reasons.

In Elgin, the Supreme Court found that constitutional claims were not wholly collateral to the CSRA because they were "the vehicle by which [the plaintiffs] seek to reverse the removal decisions, to return to federal employment, and to receive the compensation they would have earned but for the adverse employment action," which is "precisely" the type of action "regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme." 567 U.S. at 22. Here, plaintiff's challenge to TMEP § 1202.10 is the "vehicle" by which he seeks to reverse the examining attorney's refusal of the Maria mark and ultimately obtain registration of that mark. His APA and ultra vires claims do not arise "outside" of the Lanham Act's administrative review scheme but "arise from actions" the PTO's examining attorney "took in the course of that scheme." Jarkesy, 803 F.3d at 23. The interrelatedness of plaintiff's claims about § 1202.10 with the administrative review scheme is evinced by the plaintiff asserting the same issues—that § 1202.10 has no basis in the statute or relevant case law—before the TTAB. As the D.C. Circuit concluded in Jarkesy, where a plaintiff "pressed the same claims" in the administrative proceedings, "it is difficult to see how [the claims] can still be considered collateral to any [agency] orders or rules from which review might be sought, since [the agency] will, one way or another, rule on those claims and it will be the [agency's] order that [the plaintiff] will appeal." 803 F.3d at 23 (internal quotations omitted).

Plaintiff's attempt to divorce his appeal of the decision denying registration of the Maria mark from his challenge to TMEP § 1202.10 has no merit and does not render the instant civil action "wholly collateral." The only reason plaintiff is challenging § 1202.10 is because the examining attorney relied on the provision in refusing registration of the Maria mark. Plaintiff admits as much when he states that the legal injury he has suffered is the refusal of registration of the mark. As defendant correctly points out, that injury is redressable on a direct appeal of the TTAB's final decision to a federal court, but is not redressable in the current civil action.

Moreover, as defendant points out, permitting plaintiff to avoid the Lanham Act's exclusive review scheme simply because he contends that he is challenging the rule used in the examination proceeding and not the decision resulting from that proceeding would open the floodgates to requests for judicial review on the basis of such "artful pleading." The mere recharacterization of a plaintiff's claims as challenging a policy and not a decision does not take those claims outside an exclusive review scheme, and it is clear that Congress would not have intended to permit litigants to circumvent a statutory scheme in this way. See Brown v. GSA, 425 U.S. 820, 833 (1976) ("It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading."); Polyweave Packaging, Inc. v. Buttigieg, 51 F.4th, 675, 684 (6th Cir. 2022) (rejecting the plaintiff's argument that its challenge to a rule applied in an enforcement proceeding was wholly collateral from a civil-penalty order because "[a] party could always circumvent an exclusive-jurisdiction provision applicable to agency action by challenging the promulgation/rescission of the rules used in an agency proceeding rather than the order resulting from the proceeding"). For these reasons, plaintiff's claims are not wholly collateral to the Lanham Act's review scheme.

The third factor, whether plaintiff's claims fall outside the TTAB's area of expertise, strongly supports finding that Congress intended that his claims would be subject to the exclusive statutory review scheme of the Lanham Act. Plaintiff's claims are statutory and require interpretation of the Lanham Act, which the PTO is charged with administering, as well as the statute's application to characters in creative works, and therefore his claims fall squarely within the expertise of the PTO. In Thunder Basin, the Supreme Court found that "exclusive review before [an agency] is appropriate since 'agency expertise [could] be brought to bear on' the statutory questions presented." 510 U.S. at 214-15 (quoting Whitney Nat'l Bank in Jefferson Parish v. Bank of New Orleans & Trust Co., 379 U.S. 411, 420 (1965)). That is the case here, where the TTAB has extensive experience with interpreting and applying the Lanham Act's registration requirements to characters in creative works. Because the TTAB's expertise can be "brought to bear" on the issues presented by plaintiff's claims, there is "no reason to conclude that Congress intended to exempt such claims from exclusive review" before the TTAB before federal court review. Elgin, 567 U.S. at 23.

In sum, under the three step-two Thunder Basin factors, plaintiff's claims challenging TMEP § 1202.10 are the type that Congress intended to be reviewed within the administrative and judicial review framework provided for by the Lanham Act, and it is therefore "fairly discernible" that the Lanham Act's review scheme was intended to preclude this Court from having jurisdiction under the APA over plaintiff's claims. Plaintiff has an opportunity for comprehensive judicial review of his claims concerning TMEP § 1202.10, but he must wait until the conclusion of the TTAB appeal process. Allowing plaintiff to bring his claims to federal

court prematurely would destroy the Lanham Act's comprehensive scheme for judicial review

provided for by Congress without any indication that Congress intended such action.[2]

>    3.   Additional Bases for Dismissing the Complaint

As an additional ground for dismissal, defendant argues that even if plaintiff could

"decouple his substantive challenge to TMEP § 1202.10 from the ongoing administrative

proceedings within the USPTO," such an independent facial challenge to TMEP § 1202.10

would be barred on statute of limitations grounds.  [Dkt. No. 9] at 17.  Defendant points out that

under 28 U.S.C. § 2401(a), a "civil action commenced against the United States shall be barred

unless the complaint is filed within six years after the right of action first accrues," id., and a

cause of action under the APA "accrues or begins to run at the time of 'final agency action,'"

Hire Order Ltd. v. Marianos, 698 F.3d 168, 170 (4th Cir. 2012).  In the case of a facial challenge

to an agency ruling under the APA, "the limitations period begins to run when the agency

publishes the regulation."  Id.  Defendant contends that because the PTO promulgated TMEP

§ 1202.10 more than six years before plaintiff filed this civil action, a facial claim would be time

barred.  Although defendant's argument appears to have merit, in his opposition, plaintiff

---

[2] Plaintiff argues that even if the Court lacks jurisdiction to review TMEP § 1202.10 under the
APA, "the Court still has jurisdiction over the same issue, under the Court's equity power,"
because Count II challenges TMEP § 1202.10 as ultra vires agency action.  [Dkt. No. 13] at 19.
Plaintiff invokes the "Leedom exception," which recognizes that "even when the statutory
language bars judicial review, . . . an implicit and narrow exception to the bar on judicial review
exists for claims that the agency exceeded the scope of its delegated authority or violated a clear
statutory mandate."  Hanauer v. Reich, 82 F.3d 1304, 1307 (4th Cir. 1996) (discussing Leedom
v. Kyne, 358 U.S. 184 (1958)).  Defendant is correct that the Leedom exception does not apply
to this civil action, because the Lanham Act provides plaintiff "with a meaningful and adequate
opportunity for judicial review" of § 1202.10.  Bd. of Governors of Fed. Reserve Sys. v. MCorp
Fin., Inc., 502 U.S. 32, 43, 112 (1991); see Scottsdale Cap. Advisors Corp. v. FINRA, 844 F.3d
414. 421 (4th Cir. 2016) (providing that to invoke the Leedom exception, the plaintiff must show
that "the absence of federal court jurisdiction over an agency action 'would wholly deprive' the
aggrieved party 'of a meaningful and adequate means of vindicating its statutory rights" (quoting
Long Term Care Partners, LLC v. United States, 516 F.3d 225, 233 (4th Cir. 2008)).

disputes that he is bringing a "facial challenge to TMEP § 1202.10" and makes clear that his challenge to TMEP § 1202.10 is an as-applied challenge under the APA. [Dkt. No. 13] at 18-19. This argument does not help plaintiff's case because his focus on when the examiner applied § 1202.10 in her office action as the basis for his injury supports the Court's conclusion that he is required to bring his claims through the Lanham Act's review scheme.

Finally, if plaintiff is in fact bringing an as-applied challenge to TMEP § 1202.10, this civil action is not ripe for review. Ripeness involves an inquiry into "the fitness of the issues for judicial decision," and "[w]hen a party challenges government action," the question is "whether the challenged conduct constitutes a final agency action." Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1384 (Fed. Cir. 2012). To constitute final agency action, "the action must mark the 'consummation' of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow." Id. (quoting Bennett v. Spear, 520 U.S. 154, 177-78 (1997)). Here, because plaintiff has appealed the examining attorney's final office action to the TTAB, the application of TMEP § 1202.10 to the Maria mark application has been rendered non-final, the agency's decision-making process has not concluded, and plaintiff's claims are therefore not ripe for review.

### III. CONCLUSION

For all the foregoing reasons, defendant's Motion to Dismiss [Dkt. No. 8] will be granted and this civil action will be dismissed without prejudice because the Court lacks jurisdiction.

Entered this 1ˢᵗ day of March, 2023.

Alexandria, Virginia

/s/
_____
Leonie M. Brinkema
United States District Judge